UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
G&G CLOSED CIRCUIT EVENTS, LLC,

                Plaintiff,

      - against -

**MEMORANDUM AND ORDER**
14-CV-5334 (RRM) (SMG)

ELADIO GONZALEZ d/b/a SIN FRONTERAS
RESTAURANT,

                Defendant.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      G&G Closed Circuit Events, LLC, obtained a default judgment against Eladio Gonzalez for violations of the Federal Communications Act. Gonzalez, proceeding *pro se*, now moves to vacate that default judgment pursuant to Rules of the Federal Rules of Civil Procedure. The Court grants Gonzalez's motion pursuant to Rule 60(b)(6), and directs the Clerk of Court to reopen the case.

## BACKGROUND

      G&G Closed Circuit Events, LLC ("G&G") owned the license to distribute the closed-circuit telecast of the September 15, 2012, WBC Middleweight Championship Fight between Saul "Canelo" Alvarez and Josesito Lopez ("the Fight"). (Mot. for Default J. (Doc. No. 10) at 2.)[1] G&G sold sublicenses to bars and restaurants entitling them to show the Fight. (*Id.*) According to G&G, the night the Fight aired, Cosmo Lubrano observed it being shown at Sin Fronteras Restaurant at 5715 5th Avenue, Brooklyn, New York. (*Id.* at 3.) Sin Fronteras had not purchased a license to show the Fight. (*Id.*)

---

[1] Page numbers correspond to ECF pagination.

G&G filed its complaint against Gonzalez, shareholder and principal of Sin Fronteras, on September 11, 2014, alleging violations of the Federal Communications Act, 47 U.S.C. §§ 533, 605. (Doc. No. 1.) The Federal Communications Act prohibits the unauthorized interception, receipt, and broadcast of communication signals. *See* 47 U.S.C. §§ 533, 605. After the caption, the complaint lists three addresses for Gonzalez: Eladio Gonzalez, d/b/a Sin Fronteras Restaurant, 5715 5th Avenue, 57th & 58th Street, Brooklyn, NY 11220; Eladio Gonzalez, c/o Sin Fronteras Restaurant, 5715 5th Avenue, 57th & 58th Street, Brooklyn, NY 11220; and Eladio Gonzalez, 575 West 159th Street, Apt. 51, New York, NY 10032. (Compl. at 1.)

G&G subsequently filed three different affidavits of service. (Doc. Nos. 4–6.) In the first, Laquesia Ivory stated that she served "ELADIO GONZALEZ D/B/A SIN FRONTERAS RESTAURANT" at 5715 5th Avenue, Brooklyn, NY, 11220, on September 30, 2014, at 6:20 PM, by delivering the summons and complaint to a 51–65 year old male who was between five feet, nine inches and six feet tall, 200–250 pounds, and who stated he was Eladio Gonzalez. (First Affidavit of Service (Doc. No. 4).) In a second affidavit of service, Ivory again stated that she effected personal service on Gonzalez on the same day, at the same time, by personally delivering the summons and complaint to a man of the same description. (Second Affidavit of Service (Doc. No. 5).) In the final affidavit of service, Dillon G. Reyes stated that he personally served Eladio Gonzalez's brother, Becenth Gonzalez, on October 2, 2014, at 2:28 PM at 575 West 158th Street, Apt. 51, New York, NY 10032. (Third Affidavit of Service (Doc. 6).) According to Reyes, Becenth Gonzalez was "a person of suitable age and discretion," and confirmed that the apartment was Eladio Gonzalez's residence or dwelling place in the state. (*Id.*)

Gonzalez's time to answer based on these dates of service expired. On November 11, 2014, G&G filed a request for certificate of default. (Doc. No. 7.) After the Clerk of Court entered Gonzalez's default, G&G moved for default judgment. (Doc. No. 8.) With its motion for default judgment, G&G filed the sworn affidavit of Cosmo Lubrano, who testified that he observed the Fight being shown at Sin Fronteras at 12:15 AM on September 16, 2012. (Lubrano Aff. (Doc. No. 10-1) at 1.) On a form affidavit Lubrano wrote that he observed "highlights of fights showing." (*Id.*) He did not fill out the affidavit sections calling for the names of the fighters, the color of the trunks they wore, the round observed, the ring mat logo, or the corner post logo. (*Id.*) Lubrano also stated that he spoke to a "female Hispanic wearing a blue shirt and black skirt [who] identified herself as Eladia Gonzalez, the restaurant manager." (*Id.* at 3.)

The Court referred G&G's motion for default judgment to Magistrate Judge Steven Gold for a report and recommendation. (12/01/2014 Order Referring Motion.) Adopting Judge Gold's report and recommendation, the Court granted the motion for default judgment. (Doc. No. 16.) Judgment was entered for G&G on September 21, 2015. (Doc. No. 17.) The Court's mailing of the judgment to Gonzalez, addressed to "57 West 159th Street, New York, New York 10032," was returned as not deliverable. (*See* Doc. No. 18.)

Gonzalez filed his motion to vacate the judgment on November 29, 2018. (Mot. to Vacate (Doc. No. 19).) Gonzalez principally argues he was never served. (*Id.* at 4.) Gonzalez further explains that he did not learn of the case when the clerk mailed the judgment because the envelope was misaddressed – he lived at 575 West 159th Street, not 57 West 159th Street. (*Id.*) Finally, Gonzalez argues that he has a meritorious defense: namely, that he did not show the Fight that night and there are reasons to doubt the veracity of Lubrano's sworn affidavit. (*Id.* at 3–4.) G&G has not filed an opposition to Gonzalez's motion. However, G&G did file a notice

of satisfaction of judgment on May 10, 2019, which states that Gonzalez has fully satisfied the judgment at issue here.[2] (Doc. No. 20.)

## STANDARD OF REVIEW

Rule 60(b) provides six grounds on which a party may be relieved from a final judgment. FED. R. CIV. P. 60(b). Relevant here are Rules 60(b)(4) and 60(b)(6), which provide that a Court may a relieve a party from a final judgment if "the judgment is void," (*id.* 60(b)(4)), or for "any other reason that justifies relief." (*Id.* 60(b)(6).)

Motions to vacate default judgments are "addressed to the sound discretion of the district court . . . ." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "[I]n ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Court keeps in mind that Gonzalez is proceeding *pro se*. Courts must read *pro se* submissions with "special solicitude" and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–76 (2d Cir. 2006) (quotations omitted).

## DISCUSSION

Gonzalez specifically states that he is moving to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60, (Mot. to Vacate at 4), but he does not specify a subsection of that rule. However, Gonzalez argues that the default judgment "is void, as [he] never received proper service of the summons and complaint." (*Id.* at 2.) On this basis, the Court construes

---

[2] Gonzalez has not withdrawn his motion to vacate, nor does the Court conclude it is mooted by the satisfaction of judgment. If Gonzalez were not served in this case, the default judgment against him would be void and Gonzalez might be entitled to restitution of his prior satisfaction of judgment. *See, e.g.*, *Belcastro v. Task Indus., Inc.*, No. 98-CV-15364, 1999 U.S. LEXIS 10665, at *7–8 (9th Cir. May 21, 1999) (holding that a district court abused its discretion in failing to order restitution of funds it found were obtained through the enforcement of a default judgment subsequently determined to be void); *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985) (affirming district court's order to vacate judgments as void and order restitution of payments in satisfaction of judgment).

Gonzalez's motion as a motion pursuant to Federal Rule of Civil Procedure 60(b)(4), which permits a court to relieve a party from a final judgment when that judgment is void.

Gonzalez also argues in his motion that his default was not willful and that he has a meritorious defense. (Mot. to Vacate at 1, 3–4.) Because these are factors the Second Circuit has articulated for evaluating a motion to vacate a default judgment under Federal Rule of Civil Procedure 60(b)(6), *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993), the Court also construes Gonzalez's motion as a motion pursuant to Rule 60(b)(6).

A defendant is not entitled to relief pursuant to Rule 60(b)(6) unless no other provision of Rule 60(b), including Rule 60(b)(4), applies. *See Manney v. Intergroove Media GMBH*, No. 10-CV-4493 (SJF) (WDW), 2014 WL 1224171, at *7 (E.D.N.Y. Mar. 24, 2014) (collecting cases). The Court will therefore first consider whether Gonzalez is entitled to relief under Rule 60(b)(4) before considering whether he is entitled to relief under Rule 60(b)(6).

1. **Gonzalez has not established that the default judgment is void.**

Gonzalez moves to vacate the default judgment as void pursuant to Federal Rule of Civil Procedure 60(b)(4), arguing that he was never served by G&G. (Mot. to Vacate at 2.) Motions pursuant to Rule 60(b)(4) must be made "within a reasonable time." FED. R. CIV. P. 60(c)(1). Gonzalez claims to have only recently learned of the existence of the default judgment, so his motion is made within a reasonable time. (Mot. to Vacate at 1.)

If Gonzalez was not served with the complaint, as he claims, the default judgment is void because it was obtained in the absence of personal jurisdiction. Void default judgments obtained absent personal jurisdiction must be vacated. *See United States v. Kadoch*, No. 96-CV-4720 (CBA), 2011 U.S. Dist. LEXIS 73722, at *12 (E.D.N.Y. June 10, 2011), *report and recommendation adopted*, 2011 WL 2680510 (E.D.N.Y. July 8, 2011) ("Where a default

judgment is obtained in the absence of personal jurisdiction, that judgment is void and must be vacated."); *see also Copelco Capital v. Gen. Consul of Bolivia*, 940 F. Supp. 93, 94 (S.D.N.Y. 1996) ("A court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, 'which also means that he must have been effectively served with process.'" (quoting 10 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2682, at 407 (2d ed. 1983))).

G&G filed three affidavits of service in this action. In the first two affidavits, Laquesia Ivory claimed to have personally served Gonzalez at his restaurant. (First Affidavit of Service; Second Affidavit of Service.) In the third affidavit, Dillon G. Reyes claimed to have served the complaint and summons on Gonzalez's brother at Gonzalez's apartment, and to have subsequently mailed the complaint and summons to the apartment. (Third Affidavit of Service.)

Gonzalez maintains that Ivory's affidavits, purporting to have personally served Gonzalez, are simply false. (First Affidavit of Service; Second Affidavit of Service.) Gonzalez argues that Ivory's descriptions of him in the affidavits are evidence that he was not in fact personally served. Both affidavits describe Gonzalez as between five feet, nine inches and six feet tall and 200-250 pounds. (First Affidavit of Service; Second Affidavit of Service.) Gonzalez says he is actually five feet, seven inches tall and weighs approximately 160 pounds. (Mot. to Vacate at 4.) The Court notes that Gonzalez does not specifically state his weight at the time the affidavits were completed, writing, "I am about 5'7" and weigh about 160 pounds." (*Id.* at 4.) At the same time, Gonzalez clearly means to state that he was far less than 200-250 pounds at the time of service, writing, "No one could have mistaken me for someone of that height and weight." (*Id.*) While the law requires sworn allegations to rebut a process server's affidavit, *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002),

and none were provided here, the differences between Ivory's account of Gonzalez's height and weight and his reported actual height and weight are substantial, and raise a strong basis to doubt whether Gonzalez was personally served by Ivory in 2014.

Reyes's sworn affidavit also states that he left copies of the summons and complaint with Gonzalez's brother and subsequently mailed the same to Gonzalez's home. (Third Affidavit of Service; Mot. to Vacate.) As described, Reyes's service would be effective under federal and New York service of process procedures. *See* Fed. R. Civ. P. 4(e)(2)(B); N.Y. C.P.L.R. § 308.

Gonzalez's motion provides no facts clearly refuting Reyes's affidavit of service. Gonzalez's motion might be read to assert that Reyes's mailing of the summons and complaint were misaddressed, (*see* Mot. to Vacate at 4), but it is unclear how he came to that conclusion – Reyes's affidavit lists what appears to be Gonzalez's correct address for mailing. (Third Affidavit of Service.) And even if Reyes misaddressed the mailed summons and complaint, leaving the summons and complaint with Gonzalez's brother, if true, would constitute effective service of process under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(e)(2)(B). Without more evidence from Gonzalez, the Court cannot conclude that Reyes's reported service was ineffective. Gonzalez should ordinarily be given the opportunity to present that additional evidence. However, since the Court cannot at this juncture find a basis under Rule 60(b)(4), it may proceed under Rule 60(b)(6) to consider vacatur of the default judgment.

**2. The facts support vacatur of the default judgment pursuant to Rule 60(b)(6).**

Federal Rule of Civil Procedure 60(b)(6) permits a district court to vacate a final judgment for "any reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Like a motion pursuant to Rule 60(b)(4), a motion pursuant to Rule 60(b)(6) "must be made within a reasonable time."

FED. R. CIV. P. 60(c)(1). Gonzalez's motion is filed within a reasonable time because, according to his unopposed motion, he only recently learned of the default judgment. (Mot. to Vacate at 1.)

"In deciding a motion to vacate a default judgment, the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *McNulty*, 137 F.3d at 738. These are the same factors courts consider upon a motion to set aside a default under Federal Rule of Civil Procedure 55(c), but "courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in [that] action." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted).

### A. Wilfulness

The first factor a court considers on a motion to vacate a default judgment under Rule 60(b)(6) is whether the default was willful. Willfulness requires more than negligence or carelessness – courts will find a default willful and potentially deny a motion to vacate on that basis where a litigant's conduct is "egregious" or "not satisfactorily explained." *McNulty*, 137 F.3d at 738.

As explained in the previous section, Gonzalez provides some compelling arguments supporting the view that he was not served with the summons and complaint. Gonzalez therefore provides some support for the conclusion that his failure to respond after service of process was not willful. If Gonzalez did not receive notice through service of process, the next time Gonzalez would have been notified of the suit would likely have been when the judgment was mailed to his personal residence. That court mailing was returned as not deliverable. (Doc. No. 18.) Gonzalez points out that the returned envelope shows it was mistakenly addressed to "57

8

West 159th Street" instead of Gonzalez's address at 575 West 159th Street. (Mot. to Vacate at 4.) At the very least, Gonzalez's failure to receive notification of the judgment in this case was not willful.

Gonzalez explains that he learned of this default judgment when a judgment was executed against him in a separate case. (Mot. to Vacate at 1.) Gonzalez's seemingly prompt challenge to the default judgment upon learning of it provides an additional reason to believe his failure to engage in the lawsuit was not willful. The Court concludes that Gonzalez has satisfactorily explained his failure to engage with the lawsuit and has given good reason to find that his default was not willful.

### B. Gonzalez's Defense

Gonzalez also argues that he has a meritorious defense: he did not show the fight. (Mot. to Vacate at 3.) Instead of attempting to prove a negative, Gonzalez challenges the sufficiency of G&G's evidence to the contrary.

G&G's evidence that Gonzalez's Sin Fronteras Restaurant showed the Fight is an affidavit from Cosmo Lubrano. (Lubrano Aff.) In this affidavit, Lubrano claims to have observed "highlights of fights" showing at Sin Fronteras on the night of the Fight. (*Id.* at 2.) Lubrano was using a form affidavit, which prompted him for more details about what he saw. (*Id.* at 1.) Yet Lubrano left a number of sections asking for these details blank, including sections for the logos on the mat and corner posts, the names of the fighters on screen, and the color of the fighters' trunks. (*Id.* at 2.) Lubrano also stated he spoke to a "female Hispanic wearing a blue shirt and black skirt [who] identified herself as Eladia Gonzalez, the restaurant manager." (*Id.* at 3.)

9

As Gonzalez argues in his motion, there are serious evidentiary problems with Lubrano's affidavit. (Mot. to Vacate at 3.) Lubrano only states that he observed "highlights of fights showing," without any information supporting the conclusion that the highlights were from the Fight in question. (Lubrano Aff. at 2–3.) Moreover, Lubrano claims that he spoke to a "restaurant manager" named "Eladia Gonzalez" at Sin Fronteras. (*Id.* at 3.) Lubrano reports that "[n]o one by that name has ever worked in my restaurant," adding, "its similarity to my name, Eladio Gonzalez, further calls into question Mr. Lubrano's credibility." (Mot. to Vacate at 4.) Gonzalez has presented a strong basis for doubting the veracity of the evidence G&G provided in support of its motion for default judgment, and thus, has presented grounds for a meritorious defense.

### C. Prejudice

G&G did not oppose Gonzalez's motion, and thus has not asserted any basis to suggest that vacatur may prejudice G&G. Of course, vacating a default judgment will delay resolution of the case. But delay of limited import here. The facts surrounding G&G's claim are straightforward, and are memorialized in Lubrano's affidavit. Moreover, it appears that G&G has only recently sought to collect on this judgment, waiting multiple years to do so. Given this fact, it is difficult to conclude that further delay would greatly prejudice G&G. *See Kadoch*, 2011 U.S. Dist. LEXIS 73722, at *14 (noting that the plaintiff "cannot complain about a delay of several months" after delaying years to enforce a judgment). The Court has been provided with no reason to conclude that vacating this default judgment will prejudice G&G.

Under these circumstances, and coupled with the concerns raised by Gonzalez regarding service of the summons and complaint, the Court finds adequate basis to vacate the default judgment against Gonzalez pursuant to Federal Rule of Civil Procedure 60(b)(6).

## CONCLUSION

Gonzalez's motion to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) is GRANTED. The Clerk of Court is directed to reopen the case, send a copy of this Order to the *pro se* defendant, and note the mailing on the docket.

This action is re-committed to Magistrate Judge Gold for all pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge